AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

OCT 17 2019

SOUTHERN ... FORNIA
BY ... DEPUTY

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) | Case No.  1 9 M J 4 5 6 0 |
| One iPhone 11 Cellular Phone Seized as FP&F No. 2019250600120201-003 | | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Cocaine |

The application is based on these facts:

See attached Affidavit of Special Agent Eric Wilson, Homeland Security Investigations

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

S.A. Eric Wilson, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/16/19

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Mitchell D. Dembin, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>One iPhone 11 Cellular Phone
>Seized as FP&F No. 2019250600120201-003
>(the "Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, 9495 Customhouse Plaza, San Diego, CA 92154.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 23, 2019 to September 24, 2019:

a.   tending to indicate efforts to import cocaine, or some other federally controlled substance, from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

**AFFIDAVIT**

I, Special Agent Eric Wilson, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> One iPhone 11 Cellular Phone
>
> Seized as FP&F No. 2019250600120201-003
>
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960 and 963, as further described in Attachment B.

2.      The requested warrant relates to the investigation and prosecution of Evelin Giselle Carrillo ("Defendant") for importing approximately 46.50 kilograms (102.51 pounds) of cocaine from Mexico into the United States. *See U.S. v. Carrillo*, Case No. 19-MJ-04137 (S.D. Cal.) at ECF No. 1 (Complaint). The Target Device is currently in the evidence vault located at 9495 Customhouse Plaza, San Diego, CA 92154.

3.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

4.      I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent ("SA") with Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), since July 2018.  I am assigned to a Contraband Smuggling group in San Ysidro, CA, that focuses on contraband smuggling of

1  the importation of a controlled substance on the Southwest Border. I am cross-designated
2  and have the authority to conduct Title 21 investigations and enforcement activities. I have
3  been involved with investigations for Title 21 offenses working closely with other
4  agencies, including the U.S. Drug Enforcement Administration and multiple state and local
5  agencies.

6        5.      As a federal law enforcement officer for over 7 years, I have received formal
7  training, as well as extensive on the job training, relating to the investigation of narcotics
8  trafficking, bulk cash smuggling, and techniques used for contraband smuggling. I have
9  investigated illicit narcotics, controlled substances, and other crimes that have resulted in
10 arrests, indictments, and convictions. While participating in these and other criminal
11 investigations, I have participated in search warrants on residences, vehicles and electronic
12 media, such as cell phones. As a result of these investigations, I have become familiar with
13 methods and techniques used by narcotics traffickers to import narcotics into the U.S. and
14 distribute those narcotics within the United States.

15       6.      Through my training, experience, and conversations with other members of
16 law enforcement, I have gained a working knowledge of the operational habits of narcotics
17 traffickers, in particular those who attempt to import narcotics into the United States from
18 Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to
19 work in concert with other individuals and to do so by utilizing cellular telephones. Because
20 they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry
21 out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring
22 the progress of their contraband while it is in transit, providing instructions to drug couriers,
23 warning accomplices about law enforcement activity, and communicating with co-
24 conspirators who are transporting narcotics and/or proceeds from narcotics sales.

25       7.      Based upon my training, experience, and consultations with law enforcement
26 officers experienced in narcotics trafficking investigations, and all the facts and opinions
27 set forth in this affidavit, I know that cellular telephones (including their Subscriber
28 Identity Module (SIM) card(s)) can and often do contain electronic evidence, including,

1  for example, phone logs and contacts, voice and text communications, and data, such as
2  emails, text messages, chats and chat logs from various third-party applications,
3  photographs, audio files, videos, and location data.   In particular, in my experience and
4  consultation with law enforcement officers experienced in narcotics trafficking
5  investigations, I am aware that individuals engaged in drug trafficking commonly store
6  photos and videos on their cell phones that reflect or show co-conspirators and associates
7  engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds
8  and assets from drug trafficking, and communications to and from recruiters and
9  organizers.

10      8.      This information can be stored within disks, memory cards, deleted data,
11  remnant data, slack space, and temporary or permanent files contained on or in the cellular
12  telephone. Specifically, searches of cellular telephones may yield evidence:

13
14      a.      tending to indicate efforts to import cocaine, or some other federally
            controlled substance, from Mexico into the United States;

15
16      b.      tending to identify accounts, facilities, storage devices, and/or services–
            such as email addresses, IP addresses, and phone numbers–used to
17          facilitate the importation of cocaine, or some other federally controlled
18          substance, from Mexico into the United States;

19      c.      tending to identify co-conspirators, criminal associates, or others involved
            in importation of cocaine, or some other federally controlled substance,
20          from Mexico into the United States;

21
22      d.      tending to identify travel to or presence at locations involved in the
            importation of cocaine, or some other federally controlled substance, from
23          Mexico into the United States, such as stash houses, load houses, or
            delivery points;
24
25      e.      tending to identify the user of, or persons with control over or access to,
            the Target Device; and/or
26
27      f.      tending to place in context, identify the creator or recipient of, or establish
            the time of creation or receipt of communications, records, or data involved
28          in the activities described above.

1

**FACTS SUPPORTING PROBABLE CAUSE**

2    9.    On September 23, 2019, at approximately 9:18 p.m., Defendant applied for
3    permission to enter the United States at the Otay Mesa Port of Entry. Defendant was the
4    driver, registered owner, and sole occupant of a 2017 Nissan Sentra. A Customs and Border
5    Protection Officer ("CBPO") noticed that the floor behind Defendant's seat look raised and
6    bumpy. When the CBPO pealed the carpet back, she discovered a vacuum-sealed bag. A
7    Human and Narcotic Detection Dog then screened the vehicle and alerted to the passenger
8    quarter panel of the vehicle. Defendant was referred for secondary inspection, and CBPOs
9    discovered approximately 40 packages concealed within the back seat, rear floor, and rear
10   quarter panels of Defendant's vehicle. The packages weighed approximately 46.50 kgs
11   (102.51 lbs.), and field-tested positive for cocaine. Defendant was subsequently arrested
12   and the Target Device was seized incident to Defendant's arrest.

13   10.   Later, agents read Defendant her *Miranda* rights, and she agreed to speak to
14   agents without an attorney present. Defendant denied knowledge of the drugs in her
15   vehicle.  Defendant admitted knowledge to smuggling what she believed to be money into
16   the United States. Defendant further explained that she met a man named "Joel" (who she
17   referred to as her "sugar daddy" and known as "Jefe" to others) at a club in Tijuana 2.5 to
18   3 months prior to her arrest, although she later claimed to have met him on or about August
19   17, 2019. The Defendant stated she met Joel through a female named "Esperanza," and
20   Esperanza worked for Joel. Defendant stated she would communicate through WhatsApp
21   with Esperanza regarding Joel. Defendant also stated Joel would call her from different
22   numbers. Defendant claimed that Joel smuggles money from Mexico into the United States
23   because the peso exchange rate is better in the United States. Defendant claimed that she
24   did not know she was crossing narcotics and was told she was crossing money. Defendant
25   stated Joel gave her money to pay off her car, would deposit money into her accounts, and
26   previously paid her thousands of dollars on multiple occasions to cross money into the
27   United States for him. Defendant explained she would park the car in her driveway and a
28   man would come to pull the "money" out of her car. Defendant claimed ownership of the

4

Target Device during her post-arrest interview and stated Joel bought it for her. Defendant provided agents with the security code to unlock the Target Device. Defendant also utilized the Target Device to get the number of her babysitter out of the Target Device's contact list.

11.   In light of the above facts, Defendant's statements, and my own experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States.  Based on these facts, particularly Defendant's statements that she was working for Joel, received payments from Joel, given the Target Device by Joel, and in phone communication with Joel and Esperanza there is probable cause to believe that Defendant was using the Target Device to communicate with Joel and others unknown to coordinate her smuggling attempt.

12.   In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on June 23, 2019, to September 24, 2019 which was the day following Defendant's arrest. That date range is based on Defendant's representations that she met Joel, the man she was working for, approximately 2.5 to 3 months before her arrest.

## METHODOLOGY

13.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

1  personal digital assistants and have functions such as calendars and full address books and
2  can be mini-computers allowing for electronic mail services, web services and rudimentary
3  word processing. An increasing number of cellular service providers now allow for their
4  subscribers to access their device over the internet and remotely destroy all of the data
5  contained on the device. For that reason, the device may only be powered in a secure
6  environment or, if possible, started in "flight mode" which disables access to the network.
7  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
8  equivalents and store information in volatile memory within the device or in memory cards
9  inserted into the device. Current technology provides some solutions for acquiring some of
10  the data stored in some cellular telephone models using forensic hardware and software.
11  Even if some of the stored information on the device may be acquired forensically, not all
12  of the data subject to seizure may be so acquired. For devices that are not subject to forensic
13  data acquisition or that have potentially relevant data stored that is not subject to such
14  acquisition, the examiner must inspect the device manually and record the process and the
15  results using digital photography. This process is time and labor intensive and may take
16  weeks or longer.

17        14.    Following the issuance of this warrant, I will collect the subject cellular
18  telephone and subject it to analysis. All forensic analysis of the data contained within the
19  telephone and its memory cards will employ search protocols directed exclusively to the
20  identification and extraction of data within the scope of this warrant.

21        15.    Based on the foregoing, identifying and extracting data subject to seizure
22  pursuant to this warrant may require a range of data analysis techniques, including manual
23  review, and, consequently, may take weeks or months. The personnel conducting the
24  identification and extraction of data will complete the analysis within 90 days, absent
25  further application to this court.

26                    **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

27        16.    At the time of Defendant's entry into the United States, law enforcement
28  officers conducted a manual review of the Target Device with Defendant's consent during

6

her interview.  I have not included any information obtained from that manual review in this affidavit and submit that probable cause exists to search the Target Device without that information.

## CONCLUSION

17.     Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963.

18.     Because the Target Device was seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device.  As stated above, I believe that the appropriate date range for this search is from June 23, 2019 to September 24, 2019.

19.     Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Eric Wilson
Homeland Security Investigations

Subscribed and sworn to before me this _____16_____ day of October, 2019.

Hon. Mitchell D. Dembin
United States Magistrate Judge

7